Slip Op. 21-138

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| POKARNA ENGINEERED STONE LIMITED,<br><br>    Plaintiff,<br><br>and<br><br>M S INTERNATIONAL, INC.,<br><br>    Consolidated Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>    Defendant,<br><br>and<br><br>CAMBRIA COMPANY LLC,<br><br>    Defendant-Intervenor. | Before: Leo M. Gordon, Judge<br><br>Consol. Court No. 20-00127 |

**OPINION**

[Commerce's Final Determination sustained.]

Dated: October 7, 2021

    Jonathan T. Stoel, Jared R. Wessel, and Nicholas R. Sparks, Hogan Lovells US LLP, of Washington, D.C., for Consolidated Plaintiff M S International, Inc.

    Joshua E. Kurland, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for Defendant United States. With him on the brief were Brian M. Boynton, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Tara K. Hogan, Assistant Director. Of counsel were Vania Wang and W. Mitch Purdy, Attorneys, U.S. Department of Commerce, Office of Chief Counsel for Trade Enforcement and Compliance, of Washington, D.C.

    Luke A. Meisner and Roger B. Schagrin, Schagrin Associates, of Washington, D.C., for Defendant-Intervenor Cambria Company LLC.

Gordon, Judge: This action involves a challenge to the final affirmative determination by the U.S. Department of Commerce ("Commerce") in the antidumping duty ("AD") investigation of certain quartz surface products ("QSPs") from India. See Certain Quartz Surface Products from India, 85 Fed. Reg. 25,391 (Dep't of Commerce May 1, 2020) (final affirm. determ.) ("Final Determination"), and the accompanying Issues & Decision Memorandum, A-533-889 (Dep't of Commerce Apr. 27, 2020), https://enforcement.trade.gov/frn/summary/india/2020-09407-1.pdf (last visited this date) ("Decision Memorandum"). Before the court is the motion for judgment on the agency record of consolidated Plaintiff M S International, Inc. ("MSI"). See Pl. MSI's R. 56.2 Mot. for J. on the Agency R., ECF No. 39 ("MSI Br."); see also Def.'s Resp. in Opp'n to Pls.' R. 56.2 Mots. for J. on the Agency R., ECF No. 45 ("Def.'s Resp."); Def-Intervenor's Resp. in Opp'n to R. 56.2 Mots. for J. on the Agency R., ECF No. 47 ("Def.-Int.'s Resp."); MSI's Reply Brief, ECF No. 54 ("MSI Reply"). The court has jurisdiction pursuant to Section 516A(a)(2)(B)(i) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(i) (2018)[1], and 28 U.S.C. § 1581(c) (2018). To facilitate the efficient disposition of this action, this opinion focuses only on the industry support challenge raised by MSI. See Scheduling Order, ECF No. 33 (bifurcating briefing in this matter).[2]

---

[1] Further citations to the Tariff Act of 1930, as amended, are to the relevant portions of Title 19 of the U.S. Code, 2018 edition.

[2] Commerce's underlying industry support determination in this matter was also the basis for the agency's decision to initiate a countervailing duty ("CVD") investigation as to QSPs from India, as well as both AD and CVD investigations into QSPs from the Republic of Turkey. See MSI Br. at 3. The court has stayed consideration of MSI's substantively similar challenges to Commerce's final determinations in these other proceedings until (footnote continued)

Consol. Court No. 20-00127 Page 3

For the reasons set forth below, the court sustains the Final Determination with respect to Commerce's industry support determination.

### I. Standard of Review

The court sustains Commerce's "determinations, findings, or conclusions" unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). More specifically, when reviewing agency determinations, findings, or conclusions for substantial evidence, the court assesses whether the agency action is reasonable given the record as a whole. Nippon Steel Corp. v. United States, 458 F.3d 1345, 1350–51 (Fed. Cir. 2006). Substantial evidence has been described as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." DuPont Teijin Films USA v. United States, 407 F.3d 1211, 1215 (Fed. Cir. 2005) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Substantial evidence has also been described as "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966). Fundamentally, though, "substantial evidence" is best understood as a word formula connoting reasonableness review. 3 Charles H. Koch, Jr., Administrative Law and

---

30 days after the issuance of a final decision in this matter. See Order in Court No. 20-00137 (Dec. 23, 2020), ECF No. 27 (Turkey AD Challenge); Order in Court No. 20-00138 (Dec. 23, 2020), ECF 27 (India CVD Challenge); Order in Court No. 20-00139 (Dec. 23, 2020), ECF No. 28 (Turkey CVD Challenge).

Consol. Court No. 20-00127                                                                                          Page 4

Practice § 9.24[1] (3d ed. 2021).  Therefore, when addressing a substantial evidence issue raised by a party, the court analyzes whether the challenged agency action "was reasonable given the circumstances presented by the whole record."  8A West's Fed. Forms, National Courts § 3.6 (5th ed. 2021).

Separately, the two-step framework provided in Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842–45 (1984), governs judicial review of Commerce's interpretation of the antidumping statute.  See United States v. Eurodif S.A., 555 U.S. 305, 316 (2009) (Commerce's "interpretation governs in the absence of unambiguous statutory language to the contrary or unreasonable resolution of language that is ambiguous.").

## II. Background

Once Commerce receives a petition, it has 20 days to initiate an investigation. 19 U.S.C. § 1673a(c)(1)(A).  In determining whether to commence an investigation, the agency must:

> (i) after examining, on the basis of sources readily available to the administering authority, the accuracy and adequacy of the evidence provided in the petition, determine whether the petition alleges the elements necessary for the imposition of a duty under [19 U.S.C. § 1673] and contains information reasonably available to the petitioner supporting the allegations, and (ii) determine if the petition has been filed by or on behalf of the industry.

Id.  As part of that process, Commerce must determine if the petition has the support of the domestic industry.  Commerce makes that calculus in one of two ways. Commerce is

required first to look at the evidence contained within the petition itself, and determine whether:

> (i) the domestic producers or workers who support the petition account for at least 25 percent of the total production of the domestic like product, and (ii) the domestic producers or workers who support the petition account for more than 50 percent of the production of the domestic like product produced by that portion of the industry expressing support for or opposition to the petition.

19 U.S.C. § 1673a(c)(4)(A). When the petition is unable to demonstrate support on its face, Commerce must then poll the relevant industry or rely on other information to determine whether support exists. See 19 U.S.C. § 1673a(c)(4)(D).

In May 2019, Commerce received a petition from Cambria Company LLC ("Cambria"), a domestic producer of QSPs, to impose antidumping duties on certain QSPs from India. Petition from Schagrin Associates to Sec'y of Commerce, PR 1–5, CR 1–5 ("Petition").[3] MSI challenged Cambria's standing to bring the petition for lack of industry support, arguing that domestic fabricators of QSPs are "producers" for industry support purposes and that several fabricators opposed initiation. See Letter from Hogan Lovells US LLP to Sec'y of Commerce Pertaining to MSI Comments on Lack of Standing at pts. 1–2, PR 39–40 ("MSI Standing Comments"). Despite MSI's challenge, Commerce initiated an antidumping investigation into the subject merchandise. See Initiation Checklist, PR 46, CR 34, ECF No. 30-7. In deciding to initiate, Commerce did not include

---

[3] "PR" refers to a document contained in the public administrative record. See ECF No. 31-2. "CR" refers to a document contained in the confidential administrative record. See ECF No. 31-3.

fabricators as domestic producers for the purpose of determining industry support. Id. at Attach. II, pp. 9–16.

Later in the investigation, MSI renewed its objection to the exclusion of fabricators from Commerce's industry support analysis. See Decision Memorandum at 36. Commerce declined to revise its affirmative industry support determination, explaining that 19 U.S.C. § 1673a(c)(4)(E) did not permit reconsideration of the industry support determination after initiation of an investigation. Id. at 37 ("Commerce is statutorily precluded from reconsidering its industry support determination at this stage of the investigation."); see also 19 U.S.C. § 1673a(c)(4)(E) ("After the administering authority makes a determination with respect to initiating an investigation, the determination regarding industry support shall not be reconsidered.").

### III. Discussion

#### A. Commerce's Interpretation of the Statutory Term "Producers"

MSI challenges Commerce's interpretation of the term "producers" in determining whether industry support exists to justify the initiation of an antidumping investigation. MSI Br. at 3–19. MSI contends that the plain meaning of "producers" includes the totality of an industry, which in its view includes fabricators. Id. at 5–11. The Government maintains that the statute is silent as to the meaning of "producers," and that Commerce is entitled to deference for its reasonable interpretation of the term under Chevron step two. Def.'s Resp. at 9–13. Accordingly, the question before the court is whether "producers" is defined broadly so as to include fabricators for the purposes of Commerce's industry support analysis under § 1673a(c)(4).

MSI maintains that the plain language of the statute (in conjunction with a contextual analysis of the relevant statutory provisions and the attendant legislative history) conveys a clear Congressional intent as to the meaning of "producers"—namely that fabricators are producers. See MSI Br. at 7–16. MSI therefore contends that Commerce's narrow interpretation is unlawful under Chevron step one, and that remand is required for Commerce to redo its industry support analysis. Id.

As described above, § 1673a(c)(4) sets forth how Commerce is to determine whether a petition to initiate an antidumping investigation was filed "by or on behalf of the industry." 19 U.S.C. § 1673a(c)(4). MSI contends that the "unambiguously expressed intent" of Congress was for Commerce to include all producers of the domestic like product in its industry determination, not "a subset of producers handpicked by a petitioner." MSI Br. at 10 (citing S. Rep. No. 103-412 (1994), joint report of several Senate Committees on Uruguay Round Agreements Act); see also Uruguay Round Agreements Act, Statement of Administrative Action, H.R. Doc. No. 103-316, vol. 1 (1994), reprinted in 1994 U.S.C.C.A.N. 4040. The joint Senate Report notes that the industry support test is satisfied "if the authorities determine that domestic producers accounting for more than 25 percent of total domestic production of the like product expressly support the petition." See MSI Br. at 10 (quoting S. Rep. No. 103-412 at 35 with added emphasis).

MSI's central argument is that "'industry' means the producers as a whole of a domestic like product, or those producers whose collective output of a domestic like product constitutes a major proportion of the total domestic production of the like product." See id. at 11 (citing 19 U.S.C. § 1677(4)(A)). MSI contends that, taken together,

the statute and joint Senate Report clearly demonstrate that Congress intended Commerce consider <u>all</u> producers of the domestic like product when calculating industry support. <u>Id.</u> at 10–11.

The U.S. Court of Appeals for the Federal Circuit ("Federal Circuit") and this Court have rejected MSI's argument on this issue. See <u>Eurodif S.A. v. United States</u>, 411 F.3d 1355, 1360 (Fed. Cir. 2005) ("<u>Eurodif</u>"); <u>USEC Inc. v. United States</u>, 27 CIT 489, 507–09, 259 F. Supp. 2d 1310, 1327 (2003) ("<u>USEC I</u>"); and <u>USEC Inc. v. United States</u>, 27 CIT 1419, 1431–33, 281 F. Supp. 2d 1334, 1345–46 (2003) ("<u>USEC II</u>"). In <u>Eurodif</u>, the Federal Circuit similarly addressed the breadth of the term "producers" in Commerce's industry support analysis. <u>Eurodif</u>, 411 F.3d at 1360–61. In affirming the trial court, the Federal Circuit determined that, under <u>Chevron</u> step two, "Commerce's interpretation of the word 'producer' was reasonable and, thus, in accordance with law." <u>Id.</u>, 411 F.3d at 1360. The Federal Circuit observed that Commerce's determination to qualify as a "producer" for industry support analysis purposes, "an entity must have a 'stake' in the domestic industry in question" was reasonable. <u>Id.</u> (noting that "Commerce then defined having a 'stake' as undertaking the 'actual production of the domestic like product' within the United States."); see also <u>USEC I</u> & <u>USEC II</u> (underlying decisions containing reasoning affirmed in <u>Eurodif</u>).

MSI's efforts to distinguish this action from <u>Eurodif</u> are misplaced. It is unable to demonstrate why the Federal Circuit's legal analysis of Commerce's interpretation of the term "producers" does not have equal application here. It is evident to the court that the term "producers" is not defined in § 1673a(c)(4). Without a definition, there is no clear

Consol. Court No. 20-00127                                                                                          Page 9

statutory answer as to whether "producers" is broadly defined so as to include QSP fabricators for purposes of Commerce's industry support analysis.

MSI next contends that the statutory scheme provides only two methods for excluding the opinions of "producers." MSI Br. at 11–16. Under 19 U.S.C. § 1673a(c)(4)(B), Commerce shall disregard producers that are "related to foreign producers" unless their interests "would be adversely affected by the imposition of antidumping duties." 19 U.S.C. § 1673a(c)(4)(B)(i). Alternatively, Commerce may disregard domestic producers of the domestic like product that also are importers of the subject merchandise. 19 U.S.C. § 1673a(c)(4)(B)(ii). MSI argues that Commerce acted unlawfully by refusing to consider the position of domestic QSP fabricators without first finding that either of these statutory provisions applied. MSI Br. at 12. MSI maintains that, in light of the expressio unius exclusion alterius canon, Congress would have provided for alternative methods of excluding the opinion of domestic producers if it intended to do so. Id. MSI, however, misses a step: 19 U.S.C. § 1673a(c)(4)(B) applies to those parties considered "producers" of the domestic like product and prescribes limited circumstances for exclusion of their opinions. The statute does not address if or how Commerce should consider the opinions of parties that Commerce finds are not "producers" of the relevant domestic like product. MSI's reliance on § 1673a(c)(4)(B) is therefore misplaced.

MSI also argues that Commerce was required to poll the industry prior to initiating the investigation as mandated by the "applicable statutory and regulatory requirements." MSI Br. at 4. MSI's argument appears to be that Commerce violated 19 U.S.C. § 1673a(c)(4)(D) when it initiated the underlying investigation without polling the industry.

Consol. Court No. 20-00127   Page 10

Section 1673a(c)(4)(D) directs Commerce to poll or sample the industry[4] "if the petition does not establish support of domestic producers or workers accounting for more than 50 percent of the total production of the domestic like product."  19 U.S.C. § 1673a(c)(4)(D).  Where Commerce determines that a petition has met the industry support threshold, no such polling is required.  See id.  Because Commerce found the requisite industry support within the petition, it was not required to poll the industry to confirm support.  See Decision Memorandum at 37 ("As stated in the Initiation Checklist, for India, the information contained in the petition met the requirements of sections 732(c)(4)(A)(i) and (ii) of the Act.  Therefore, it was unnecessary for Commerce to poll the industry or rely on other information to determine industry support for the India Petitions.").  MSI fails to identify any legal authority that would require Commerce to poll the industry upon request, despite a finding of sufficient industry support.  Accordingly, Plaintiff's Chevron step one arguments fail.

The court therefore will consider whether Commerce's interpretation of the term "producers" is "based on a permissible construction" (Chevron step two) of 19 U.S.C. § 1673a(c).  See Chevron, 467 U.S. at 843.

To guide its interpretation of "producers" for purposes of its industry support analysis, Commerce employed the "sufficient production-related activities test."[5]

---

[4] The statute also permits Commerce to "rely on other information" to determine that industry support exists in such circumstances.  See 19 U.S.C. § 1673a(c)(4)(D)(i).

[5] As Commerce explained, the "sufficient production-related activities" test focuses on six "factors typically examined by Commerce and the ITC to determine whether an entity has sufficient production-related activities to qualify as a domestic producer, including capital (footnote continued)

Defendant maintains that Commerce's interpretation of the statute was reasonable, explaining that "the statute neither defines the term 'producer' nor instructs Commerce on how to determine who qualifies, [and] Commerce has filled the statutory gap by analyzing the extent of entities' production-related activities."  Def.'s Resp. at 11.  Defendant emphasizes that "Congress intended that the standing requirement [for industry support determinations] 'provide an opportunity for relief for an adversely affected industry and to prohibit petitions filed by persons with no stake in the result of the investigation.'"  Def.'s Resp. at 14 (quoting S. Rep. No. 96-249, at 47 (1979)).  The court agrees.  Commerce may reasonably interpret "producers" in the industry support provision to mean entities that have a "stake" in the industry.  See Eurodif, 411 F.3d at 1361.  Plaintiff fails to point to any basis on which the court could conclude that Commerce's interpretation of who constitutes a producer is unreasonable.  Accordingly, the court sustains Commerce's use of the "sufficient production-related activities" test as a reasonable interpretation of the term "producers" in § 1673a(c)(4).

### B. Substantial Evidence Challenges to Commerce's Industry Support Determination

### 1. Commerce's Decision to Exclude Fabricators from its Industry Support Determination

MSI argues that, even if Commerce's interpretation of "producers" is permissible under Chevron, Commerce's application of the "sufficient production-related activities" test in the underlying industry support determination was unreasonable.  MSI Br. at 16-26.

---

investment, training and technical expertise, value added, employment levels, input sourcing, and other production activities."  See Initiation Checklist at Attach. II, p. 10.

Consol. Court No. 20-00127 Page 12

MSI argued below that QSP fabricators qualify as "producers," emphasizing the fabricators' role in the market, their technology input, and the complexity of the products they produce, as well as promotional materials from Cambria detailing the role of fabricators in QSP finishing. MSI Br. at 16–17; see also MSI Standing Comments at 3–6. MSI maintains that Commerce's finding that "fabricators do not perform sufficient production-related activities to be included in the domestic industry for industry support purposes" is not supported by substantial evidence. MSI Br. at 16.

In applying the "sufficient production-related activities" test, Commerce observed that quartz surface product producers create QSPs by "(1) mixing raw materials, (2) combining, (3) dispensing and molding, (4) pressing, (5) curing, (6) cooling, and (7) polishing." Initiation Checklist at Attach. II, p. 15 (citing Petition Volume 1 at 7, PR 1, CR 1). Whereas, Commerce noted that quartz surface product slab fabricators use producer-made QSPs and "(1) consult with customers, (2) develop engineering diagrams, (3) perform intricate cutting, and (4) perform various edge and surface finishing operations" on existing QSPs. Id. (citing MSI Standing Comments). Commerce also found that fabricators did not engage in the same complex processes as QSP slab producers. See id. at Attach. II, pp. 14–15. Commerce concluded that the six factors of the test did not support the conclusion that fabricators were "producers" of the domestic like product. Id. Specifically, Commerce explained:

> We have analyzed the information provided by the petitions and find there is reason again to conclude that fabricators do not perform sufficient production-related activities to be included in the domestic industry for industry support purposes. The petitioner provided detailed information

> to support its argument that fabricators should not be considered part of the domestic industry for standing, making it clear that there are significant differences in the level of complexity and capital investment, employment, training and technical expertise, production processes, and type of equipment, between quartz and surface product slab producers and fabricators. Based on the information provided by the petitioner, quartz slab production involves highly complex and interconnected machinery and engineering process, and, as a result, requires specialized equipment dedicated to quartz surface products production and a significantly greater amount of capital investment, training and technical expertise, and number of employees than the fabrication process. In contrast, information provided by the petitioner indicates that the fabrication process requires limited equipment that is not dedicated solely to quartz surface products, fewer employees, much less technical expertise, and significantly less capital investment. Information provided by the petitioner further indicates that the fabrication process does not change the fundamental physical characteristics imparted during the slab production process, as fabricators simply convert an existing slab into a geometrical form for its end use or application. In addition, many fabricators rely on imported slabs to produce final fabricated products.

Decision Memorandum at 37–38 (quoting Initiation Checklist at Attach. II, p. 14).

When MSI renewed its objections to Commerce's industry support analysis prior to the Final Determination, Commerce explained that it is not permitted to revisit its industry support determination after initiation. See Decision Memorandum at 37 ("Commerce is statutorily prohibited from reconsidering its industry support determination at this stage of the investigation. As a result, we continue to rely on our determination of industry support provided in the Initiation Checklist."); see also 19 U.S.C. § 1673a(c)(4)(E) ("After the administering authority makes a determination with respect

Consol. Court No. 20-00127                                                                                                   Page 14

to initiating an investigation, the determination regarding industry support <u>shall not be reconsidered</u>." (emphasis added)).

MSI contends that Commerce "only meekly referenced" the materials MSI submitted, arguing that Commerce failed to consider MSI's comments and to "articulate a satisfactory explanation for its [finding that fabricators are not "producers" for industry support purposes]."  MSI Br. at 17, 20.  The court disagrees.  MSI maintains that Commerce's conclusion under the "sufficient production-related activities" test cannot be reasonable given that the record details the extensive capital investment and value added by QSP fabricators.  <u>Id.</u> at 16–18.  While MSI emphasizes certain metrics under the "sufficient production-related activities" test by which fabricators could reasonably be found to be "producers," its arguments ignore Commerce's findings and conclusions in the context of a comparison of fabricators to slab producers.  <u>See</u> Initiation Checklist at Attach. II, p. 14 (noting that "information provided by the petitioner indicates that the fabrication process requires limited equipment that is not dedicated solely to quartz surface products, fewer employees, much less technical expertise, and significantly less capital investment.").  Despite MSI's contention that Commerce did not consider MSI's information on the record, Plaintiff is unable to point to anything other than Commerce's adverse finding that fabricators are not "producers" as evidence of Commerce's alleged failure to consider the evidence.  Consequently, Commerce's finding that fabricators are not "producers" is reasonable.

MSI also maintains that none of the individual exhibits submitted by Cambria "reveals a rational connection between Commerce's facts found and the choice made."

Consol. Court No. 20-00127                                                                                              Page 15

MSI Br. at 21.  For each exhibit provided by Cambria and relied upon by Commerce in its industry support determination, MSI provides an explanation for why that exhibit does not support Commerce's findings.  See MSI Br. at 21–23.  Almost all of MSI's purported explanations, however, challenge the weight Commerce assigned to that evidence.  While Commerce could have reasonably reached an alternative finding (i.e., Commerce could reasonably have found fabricators to be producers), Plaintiff fails to demonstrate that its preferred alternative was the one and only reasonable finding that could be reached on the record.

A party's ability to point to an alternative, reasonable finding on the agency record does not provide a basis for the court to set aside an agency's determination. See Mitsubishi Heavy Indus. Ltd. v. United States, 275 F.3d 1056, 1062 (Fed. Cir. 2001) ("the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." (quoting Consolidated Edison, Co. v. NLRB, 305 U.S. 197, 229 (1938))).  While this issue presents a close question, for MSI to establish that Commerce's industry support determination was unreasonable, MSI must demonstrate that its preferred outcome was the "one and only reasonable" conclusion Commerce could reach in light of the record. See Tianjin Wanhua Co. v. United States, 41 CIT ___, ___, 253 F. Supp. 3d 1318, 1328 (2017).  MSI has failed to meet this burden.  Accordingly, the court sustains the Final Determination.

Consol. Court No. 20-00127                                                                                           Page 16

### 2. Challenges to Commerce's and ITC's Differing Findings Regarding the Fabricators' "Production-Related Activities"

MSI further challenges Commerce's determination on the basis that it unreasonably deviates from the findings reached by the U.S. International Trade Commission ("ITC"). See MSI Br. at 17–20, 24–26. MSI highlighted, in its initial comments to Commerce, the fact that the ITC released U.S. Producer questionnaires to fabricators as part of its preliminary investigation into QSPs from India, indicating that the ITC considered fabricators to be within the scope of domestic producers. MSI Br. at 18, 24-25; see also MSI Standing Comments at 3–4. MSI also emphasizes that since Commerce's decision that fabricators do not qualify as "producers" for purposes of the industry support analysis in the underlying investigation, "the ITC has contradicted Commerce on **three** occasions." MSI Br. at 24 (referencing ITC's findings that U.S. QSP industry should be defined to include fabricators in final determination of investigation of QSPs from China, as well as preliminary and final determinations in investigations of QSPs from India and Turkey). Thus, MSI contends, Commerce's conclusion to the contrary is not supported by substantial evidence.

Commerce explained that although the ITC and Commerce both apply the terms "industry," "producer," and "domestic like product" under the statute, "they do so for different purposes and pursuant to a separate and distinct authority." See Initiation Checklist at Attach. II, pg. 1 (further noting that "[a]lthough this may result in different definitions of the like product, such differences do not render the decision of either agency contrary to law"). Indeed, "[t]his Court has long recognized the division of labor between

Consol. Court No. 20-00127                                                                                                                                                     Page 17

[ITC and Commerce] 'even where it has resulted in decisions which are difficult to reconcile.'" Consol. Fibers, Inc., v. United States, 32 CIT 855, 860 n.3, 574 F. Supp. 2d 1371 (2008) (quoting Algoma Steel Corp., Ltd. v. United States, 12 CIT 518, 523, 688 F. Supp. 639 (1988)); see also Asociacion Colombiana de Exportadores de Flores v. United States, 12 CIT 634, 693 F. Supp. 1165 (1988). Even when ITC reaches its own conclusion, Commerce may not reconsider its industry support determination after an investigation has been initiated. See 19 U.S.C. § 1673a(c)(4)(E). The court agrees with Defendant that "MSI's arguments that the ITC subsequently determined to include fabricators in the domestic industry for purposes of evaluating injury does not alter the reasonableness of Commerce's determination based on the record at initiation." Def.'s Resp. at 24–25.

      Additionally, MSI's argument suffers from a chronological fallacy: for Commerce to rely upon the ITC's fact findings, Commerce would have to know ITC's determination before reaching its own conclusions. However, it is only after Commerce determines industry support and decides to initiate an investigation that Commerce then notifies ITC of its decision. See 19 U.S.C. § 1673a(d). The ITC then proceeds with its phase of the investigation, which does not occur in concert with that of Commerce. See 19 U.S.C. § 1673b(a). Therefore, the court sustains as reasonable Commerce's industry support determination in the underlying investigation.

Consol. Court No. 20-00127											Page 18

### 3. Challenge to Commerce's Decision Not to Extend Its Deadline to Initiate an Investigation

Finally, MSI challenges Commerce's failure to extend the deadline to initiate, arguing that "serious factual disagreements among interested parties" made it unreasonable for Commerce to initiate its investigation after only 20 days.  MSI Br. at 25-26.

Upon determining that industry support meets the threshold for petitioner standing, Commerce proceeds with an investigation.  The investigation must generally commence within 20 days of the petition's filing.  19 U.S.C. § 1673a(c)(1)(A).  However, Commerce retains the discretion to extend this deadline where it requires more time to determine industry support:

> In any case in which the administering authority is required to poll or otherwise determine support for the petition by the industry under paragraph (4)(D), the administering authority may, in exceptional circumstances, apply subparagraph (A) by substituting "a maximum of 40 days" for "20 days".

19 U.S.C. § 1673a(c)(1)(B).

In the underlying investigation, Commerce determined that an extension of the industry support deadline was not necessary, as the agency found sufficient evidence of industry support within the petition.  See Initiation Checklist at Attach. II.  MSI's argument that Commerce should have extended the industry support determination deadline fails for two reasons.  First, Commerce found the necessary industry support to proceed without polling, thus making the option for a deadline extension irrelevant.  See Decision Memorandum at 37 ("There was no need for Commerce to poll the industry,

as Commerce properly found that the petition was supported by domestic producers and workers which account for more than 50 percent of the total production of the domestic like product.").

Second, even assuming Commerce could have extended its deadline, doing or not doing so was within the agency's discretion. See 19 U.S.C. § 1673a(c)(1)(B) ("the administering authority may, in exceptional circumstances," extend investigation initiation deadline to forty days (emphasis added)); see also United States v. Rodgers, 461 U.S. 677 (1983) ("The word 'may,' when used in a statute, usually implies some degree of discretion."). As the statute expressly provides, Commerce's discretion to extend its deadline is reserved for "exceptional circumstances," not for "serious factual disagreements among interested parties." Compare 19 U.S.C. § 1673a(c)(1)(B), with MSI Br. at 26. MSI has failed to demonstrate that Commerce acted unreasonably in finding that there were no "exceptional circumstances" to justify an extension under § 1673a(c)(1)(B). Accordingly, Commerce's decision not to extend its deadline is sustained.

## IV. Conclusion

For the foregoing reasons, the court sustains the Final Determination as to the challenges raised by MSI. Judgment will be entered accordingly.

/s/ Leo M. Gordon
Judge Leo M. Gordon

Dated: October 7, 2021
New York, New York